**REESE LLP**
Michael R. Reese
George V. Granade
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile:  (212) 253-4272
Email:  *mreese@reesellp.com*
            *ggranade@reesellp.com*

**THE SULTZER LAW GROUP**
Jason P. Sultzer
85 Civic Center Plaza, Suite 104
Poughkeepsie, New York 12601
Telephone: (845) 483-7100
Facsimile: (888) 749-7747
Email:  *sultzerj@thesultzerlawgroup.com*

**EGGNATZ PASCUCCI, P.A.**
Joshua H. Eggnatz
5400 S. University Drive, Suite 417
Davie, Florida 33328
Telephone: (954) 889-3359
Email:  *jeggnatz@justiceearned.com*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| AMY COMFORT, on behalf of herself and others similarly situated, | ) ) ) | Case No.: 19-cv-157 |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| RICOLA USA, INC., | ) ) | |
| Defendant. | ) ) ) ) ) ) | |
| _____ | ) | |

Plaintiff Amy Comfort ("Plaintiff"), individually and on behalf of all others similarly situated ("Putative Class"), by and through the undersigned counsel, hereby files this Class Action Complaint, against Defendant, Ricola USA, Inc. ("Defendant" or "Ricola"), and alleges as follows:

## NATURE OF THE ACTION

1.      This is a consumer protection class action. Defendant has unlawfully, fraudulently, unfairly, misleadingly, and/or deceptively represented that several varieties of its Ricola Herb Throat Drops are "Naturally Soothing" or otherwise "natural" when they are not natural because they contain synthetic, artificial, and/or genetically modified ingredients. Defendant's Throat Drops include, but are not limited to, the following varieties:

      a.   Cherry Honey;

          i.   Unnatural ingredient: malic acid.

      b.   Green Tea with Echinacea – Sugar Free;

          i.   Unnatural ingredients: aspartame, citric acid, and sorbitol.

      c.   Honey Lemon with Echinacea;

          i.   Unnatural ingredient: ascorbic acid.

      d.   Lemon Mint;

          i.   Unnatural ingredient: citric acid.

      e.   Lemon Mint – Sugar Free;

          i.   Unnatural ingredients: ascorbic acid, aspartame, and citric acid.

      f.   Mixed Berry with Vitamin C;[1]

          i.   Unnatural ingredients: sodium ascorbate and citric acid.

---

1.      This variety only states the following misrepresentation on its labeling: "Naturally Helps Support Immune System."

g.  Original Swiss Herb – Sugar Free;

i.  Unnatural ingredients: aspartame and sorbitol.

h.  Swiss Cherry – Sugar Free; and

i.  Unnatural ingredients: aspartame, citric acid, and isomalt.

i.  All other substantially similar Products ("Products").

2.      Additionally, a list of the Products at issue are contained in Exhibit A attached hereto. The list may be modified if Defendant falsely or misleadingly labels even more of its Products as "Naturally Soothing."

3.      Defendant manufactured, marketed, advertised, and sold the Products as being "Naturally Soothing" on the very front packaging of the Products. The representation that the Products are "Naturally Soothing" is central to the marketing of the Products. The misrepresentations were uniform and were communicated to Plaintiff and every other member of the Putative Class in the same manner.

4.      Unfortunately for consumers, the "Naturally Soothing" claim is false, misleading and likely to deceive reasonable consumers in the same respect, due to their unnaturalness for containing various unnatural, synthetic, artificial, and/or genetically modified ingredients.

5.      Defendant labels the Products as "Naturally Soothing" because consumers perceive Naturally Soothing foods as the equivalent as organic foods and being healthier, better, and more wholesome. The market for Naturally Soothing foods has grown rapidly in the past few years, a trend Defendant seeks to take advantage of through false and misleading advertising.

6.      Through this deceptive practice, Defendant was able to command a premium price by deceiving consumers about the attributes of its Products and distinguishing the Products from similar products that do not claim to be "Naturally Soothing."  Defendant was motivated to

mislead consumers for no other reason than to take away market share from competing products, thereby increasing its own profits. Plaintiff brings this action to stop Defendant's misleading practice.

7.      Therefore, Plaintiff brings this class action individually, and on behalf of all others similarly situated, to secure, among other things, equitable relief, declaratory relief, restitution, and in the alternative, damages, for a Putative Class of similarly situated purchasers, against Defendant, for: (1) Violations New York Deceptive Trade Practices Law, NY Gen. Bus. § 349(a); (2) Violations New York Deceptive Trade Practices Law, NY Gen. Bus. §§ 350, *et seq*; (3) Unjust Enrichment; and (4) Negligent Misrepresentation.

8.      Specifically, Plaintiff is seeking damages individually and on behalf of the Putative Class. In addition, Plaintiff is seeking an Order requiring Defendant to cease using unnatural, synthetic, artificial, and/or genetically modified ingredients in its "Naturally Soothing" Products, and/or Ordering Defendant to cease from representing the Products are "Naturally Soothing" on the packaging for the Products that contain unnatural, synthetic, artificial, and/or genetically modified ingredients.

9.      Plaintiff expressly does not seek to contest or enforce any state law that has requirements beyond those required by Federal laws or regulations.

10.     All allegations herein are based on information and belief and/or are likely to have evidentiary support after reasonable opportunity for further investigation and discovery.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over the subject matter presented by this Complaint, because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the Putative Class is a citizen of a state different from any defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000.00, exclusive of interest and costs.

12.     Pursuant to 28 U.S.C. § 1332(d)(2)(A), Plaintiff alleges that the total claims of the individual members of the Putative Class in this action are in excess of $5,000,000.00, in the aggregate, exclusive of interest and costs, and as set forth below, diversity of citizenship exists under CAFA because Plaintiff is a citizen of the State of New York, and Defendant can be considered a citizen of the State of New Jersey.

13.     This Court has personal jurisdiction over Defendant because, Plaintiff's claims arise out of Defendant's conduct within the State of New York.

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(1) and (2). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false information regarding the quality of Defendant's Products, occurred within this district.

## PARTIES

15.     Plaintiff, Amy Comfort, is over eighteen years old, and is a citizen of New York, resident of Corning, New York and purchased one or more of Defendant's Products at issue during the Class Period based upon the "Naturally Soothing" representation.

16.     Specifically, Plaintiff purchased one or more of the Products during the Class Period, including, but not limited to, a purchase of the products from a Walgreens in Corning,

New York, in the December, 2018.

17.     Defendant, Ricola, is a corporation incorporated under the laws of the State of New Jersey, with its principal place of business located at 6 Campus Dr., 2nd Floor South, Parsippany, New Jersey 07054. Defendant can be considered a "citizen" of New Jersey for diversity purposes.

18.     During the Class Period, Defendant promoted and marketed the Products at issue in this jurisdiction and in this judicial district. The advertising for the Products relied upon by Plaintiff was prepared and/or approved by Defendant and its agents, and was disseminated by Defendant and its agents through advertising containing the misrepresentations alleged herein.

19.     Defendant is the owner, manufacturer, and distributor of the Products, and is the company that created and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive advertising and statements for the Products.

20.     Plaintiff alleges that, at all times relevant herein, Defendant and its subsidiaries, affiliates, and other related entities, as well as their respective employees, were the agents, servants, and employees of Defendant, and at all times relevant herein, each was acting within the purpose and scope of that agency and employment.

21.     Plaintiff further alleges on information and belief that at all times relevant herein, the distributors and retailers who delivered and sold the Products, as well as their respective employees, also were Defendant's agents, servants and employees, and at all times herein, each was acting within the purpose and scope of that agency and employment.

22.     In addition, Plaintiff alleges that, in committing the wrongful acts alleged herein, Defendant, in concert with its subsidiaries, affiliates, and/or other related entities and their respective employees, planned, participated in and furthered a common scheme to induce

members of the public to purchase the Products by means of untrue, misleading, deceptive, and/or fraudulent representations, and that Defendant participated in the making of such representations in that it disseminated those misrepresentations and/or caused them to be disseminated.

23.    Whenever reference in this Complaint is made to any act by Defendant or its subsidiaries, affiliates, distributors, retailers and other related entities, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of Defendant committed, knew of, performed, authorized, ratified, and/or directed that act or transaction on behalf of Defendant while actively engaged in the scope of their duties.

## SUBSTANTIVE ALLEGATIONS

**A.    Defendant's False and Misleading Advertising of the "Naturally Soothing" Products**

24.    Throughout the Class Period, Defendant manufactured, distributed, marketed, advertised, and sold the Products throughout the United States, including throughout the State of New York and in this judicial District.

25.    The Products uniformly claimed to be "Naturally Soothing," when in fact, they were not, because they contained unnatural, synthetic, artificial, and/or genetically modified ingredients, including aspartame, ascorbic acid, citric acid, isomalt, malic acid, and sorbitol.

26.    Through a variety of advertising, including the front packaging of the Products, Defendant made untrue and misleading material statements and representations regarding the Products, which have been relied upon by Plaintiff and members of the Putative Class.

27.    Defendant's "Naturally Soothing" statement prominently displayed on the front of the packaging for the Products' was untrue, misleading, and likely to deceive reasonable consumers, such as Plaintiff and members of the Putative Class, because the Products are not

"Naturally Soothing," due to the presence of unnatural, synthetic, artificial, and/or genetically modified ingredients in the Products.

28.    Defendant unlawfully marketed, advertised, sold and distributed the Products to United States purchasers in grocery stores, food chains, mass discounters, mass merchandisers, club stores, convenience stores, drug stores, and/or dollar stores, as being "Naturally Soothing."

29.    All of the Products' packaging uniformly and consistently stated that the Products are "Naturally Soothing" on the front of the packaging for each of the Products.

30.    As a result, all consumers within the Putative Class, including Plaintiff, who purchased the Products were exposed to the same "Naturally Soothing" claim in the same location on the individual packaging for the Products.

31.    Unfortunately for consumers, they were charged a price premium for these alleged "Naturally Soothing" Products over Products that did not claim to be "Naturally Soothing."

32.    Defendant's "Naturally Soothing" representations conveyed a series of express and implied claims that Defendant knew were material to the reasonable consumer, and which Defendant intended for consumers to rely upon when choosing to purchase the Products.

**B.    The Products Are Not "Naturally Soothing" Because They Are Highly Processed and Contain Synthetic, Artificial, and/or Genetically Modified Ingredients**

33.    Contrary to Defendant's representations that the Products are "Naturally Soothing," they contain ingredients, without limitation, such as aspartame, ascorbic acid, citric acid, isomalt, malic acid, and sorbitol which are unnatural, synthetic, artificial, and/or genetically modified. The presence of these ingredients in the Products cause the Products to not be "Naturally Soothing."

34.    Genetically modified crops do not occur in nature, and as such are not "Naturally Soothing." On the contrary, genetically modified crops are crops that are genetically manipulated from their natural state. For example, Monsanto, one of the largest producers of genetically modified crop seed, defines genetic modification (or genetic engineering) to mean "[t]he technique of removing, modifying or adding genes to a living organism via genetic engineering or other more traditional methods. Also referred to as gene splicing, recombinant DNA (rDNA) technology or genetic engineering." Monsanto also defines Genetically Modified Organisms ("GMO") as "any organism the genetics of which have been altered through the use of modern biotechnology to create a novel combination of genetic material. GMOs may be the source of genetically modified food ingredients and are also widely used in scientific research and to produce goods other than food."[2]

35.    Upon information and belief, almost all corn grown in the United States is grown from seeds that have been genetically modified, and as such, almost all corn and corn-based ingredients in the United States are in fact unnatural, synthetic, artificial, and/or genetically modified ingredients.[3]

36.    According to the World Health Organization, of which the United States is Member State, "GMOs can be defined as organisms in which the genetic material (DNA) has been altered in a way that does not occur naturally. The technology is often called 'modern biotechnology' or 'gene technology,' sometimes also 'recombinant DNA technology' or 'genetic

---

2.    *See* Monsanto Glossary, http://www.monsanto.com/newsviews/pages/glossary.aspx#g (last visited Dec. 19, 2016).

3.    Jorge Fernandez-Cornejo and Seth James Wechsler, *Adoption of Genetically Engineered Crops in the U.S.*, United States Department of Agriculture Economic Research Service, www.ers.usda.gov/data-products/adoption-of-genetically-engineered-crops-in-the-us/recent-trends-in-ge-adoption.aspx (Last updated July 09, 2015) (89% of corn in the United States is genetically modified).

engineering.' It allows selected individual genes to be transferred from one organism into another, also between non-related species."[4]

37.    In addition, the Supreme Court has held a naturally occurring DNA segment is a product of nature and not patent eligible, but that synthetically created DNA was not naturally occurring and, therefore, is not precluded from patent eligibility. *See Ass'n. for Molecular Pathology v. Myriad Genetics, Inc*., No. 12-398, 2013 WL 2631062 (June 13, 2013). Because naturally occurring genes cannot be patented, it follows that genes that can be patented are not natural.

38.    Because GMOs have been modified through biotechnology, the Products are not "Naturally Soothing."

39.    *Ascorbic acid* is a synthetically and chemically modified form of vitamin C used in foods as a chemical preservative. It is produced from corn or wheat starch being converted to glucose, then to sorbitol, through a series of chemical processes and purification steps. *Larsen v. Trader Joe's Co*. 917 F. Supp. 2d 1019, 1021 (N.D. Cal. 2013). Further, Ascorbic acid is specifically listed as a "synthetic" under the Code of Federal Regulations. 21 C.F.R. § 205.605(b).

40.    *Aspartame* is well known as an artificial, non-saccharide sweetener.

41.    *Citric Acid* is a weak organic acid found in citrus fruits. Citric acid is frequently used as a preservative and food additive to provide acidity and sour taste to foods and beverages.[5] Citric acid can be derived in two ways: 1) through direct extraction from a citrus

---

4.    WORLD HEALTH ORGANIZATION, 20 Questions on Genetically Modified (GM) Foods, http://www.who.int/foodsafety/publications/biotech/20questions/en/index.html (last visited Oct. 3, 2016).

5.    Kristina L. Penniston, Stephen Y. Nakada, Ross P. Holmes, and Dean G. Assimos, *Quantitative Assessment of Citric Acid in Lemon Juice, Lime Juice, and Commercially-Available*

fruit (i.e. naturally), or 2) through industrial manufacturing and synthesis of glucose sources (i.e. synthetically).[6] Production from this latter method has been industry practice for the last 80 years.[7] Federal regulations allow for two synthetic alternatives to natural extraction: 1) "mycological fermentation using Candida guilliermondii," and 2) by the "solvent extraction process […] for the recovery of citric acid from aspergillus niger fermentation liquor." 21 C.F.R. § 184.1033. Candida guilliermondii is a type of yeast that produces citric acid. Major industry food manufacturers predominantly create citric acid with aspergillus niger fermentation.[8] Citric Acid is made synthetically by the fermentation of glucose. The principal sources of glucose in industry are genetically modified sugar beets and maize.[9] This fermentation process increases the acidity of a microbe's environment, which makes it harder for bacteria and mold to survive and reproduce.[10] Further, to increase Citric Acid yields, the genetic engineering of aspergillus niger that is used to create Citric Acid has been an industry focus since the 1990s.[11] Thus, not only are the glucose sources of citric acid genetically modified, but the aspergillus niger used to ferment the glucose that creates Citric Acid is genetically modified.[12]

42. **Isomalt** derives from maltitol, a sugar substitute made from corn or beet sugar – both GMO crops. Alain Braux, *GMO 101: A Practical Guide to Genetically Engineered Food* 131 (2014). Isomalt is manufactured in a two-stage process in which sucrose is first transformed

---

*Fruit Juice Products*, 22 JOURNAL OF ENDOUROLOGY 3, 567-570 (2008), www.ncbi.nlm.nih.gov/pmc/articles/PMC2637791/.
6.      B. Kristiansen, Joan Linden, Michael Mattey, CITRIC ACID BIOTECHNOLOGY 8-9 (1999).
7.      *Id*.
8.      Sanjai Saxena, APPLIED MICROBIOLOGY 76 (2015).
9.      Whitney J. Waters, *Seeds of Compromise: A Proposal and Justification for the Partial Deregulation of Genetically Modified Alfalfa and Sugar Beets*, 4 Ky. J. Equine, Agric. & Nat. Resources L. 175, 178 (2012).
10.     Saxena, *supra* at note 8.
11.     Kristiansen et al., *supra* at 6.
12.     *Id*.

into isomaltulose, a reducing disaccharide (6-O-α-D glucopyranosido-D-fructose). *Id*. The isomaltulose is then hydrogenated, using a Raney nickel catalytic converter. *Id*.

43.    ***Malic Acid*** is a synthetic compound. U.S. International Trade Commission, Synthetic Organic Chemical Index, USTIC Pub. 2933 (Nov. 1995). It is synthetically produced by the hydration of fumaric or maleic acid. 21 C.F.R. § 184.1069. Both fumaric acid and maleic acid are hazardous substances. 40 C.F.R. 116.4. Notably, Malic acid is not permitted in baby foods. 21 C.F.R. § 184.1069(d). Additionally, Malic acid is a synthetic preservative.

44.    ***Sorbitol*** is a sugar alcohol that derives from corn; 89% of corn in the United States is genetically modified.[13] On information and belief, the Sorbitol contained in Defendant's Products is derived from genetically modified corn. Additionally, the process by which sorbitol is created involves highly synthetic chemical processes.

45.    Despite all these unnatural ingredients, Defendant knowingly markets the Products as "Naturally Soothing."

### C.    Defendant Deceptively Markets the Products as "Naturally Soothing" to Induce Consumers to Purchase the Products

46.    Despite the unnatural ingredients contained in the Products, Defendant knowingly markets the Products as "Naturally Soothing" and fails to disclose material information about the Products; i.e. the fact they contain unnatural, synthetic, artificial, and/or genetically modified ingredients. This non-disclosure, while at the same time branding the Products as "Naturally Soothing," is deceptive and likely to mislead a reasonable consumer.

47.    A representation that a product is "Naturally Soothing" is material to a reasonable consumer. According to Consumers Union, "Eighty-six percent of consumers expect a 'natural'

---

13.    Jorge Fernandez-Cornejo and Seth James Wechsler, *supra* at note 3.

label to mean processed foods do not contain any artificial ingredients."[14]

48.    Defendant marketed and advertised the Products as "Naturally Soothing" to increase sales of the Products and Defendant is well-aware that claims of food being "Naturally Soothing" are material to consumers. Despite knowing that not all of the ingredients are "Naturally Soothing," Defendant engaged in a widespread marketing and advertising campaign to portray the Products as being "Naturally Soothing."

49.    Defendant engaged in this misleading and deceptive campaign to charge a premium for the Products and take away market share from other similar products.

50.    Reasonable consumers frequently rely on food label representations and information in making purchase decisions.

51.    Plaintiff and the other Putative Class members reasonably relied to their detriment on Defendant's misleading representations and omissions. Defendant's misleading affirmative statements about the "Naturally Soothing" nature of its Products obscured the material facts that Defendant failed to disclose about the unnaturalness of its Products.

52.    Plaintiff and the other Putative Class members were among the intended recipients of Defendant's deceptive representations and omissions.

53.    Defendant made the deceptive representations and omissions on the Products with the intent to induce Plaintiff's and the other Putative Class members' purchase of the Products.

54.    Defendant's deceptive representations and omissions were material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

---

14.    *See* Notice of the Federal Trade Commission, Comments of Consumers Union on Proposed Guides for Use of Environmental Marketing Claims, 16 CFR § 260, Dec. 10, 2010, http://www.ftc.gov/os/comments/greenguiderevisions/00289-57072.pdf.

55.     Thus, Plaintiff's and the other Putative Class members' reliance upon Defendant's misleading and deceptive representations and omissions may be presumed.

56.     The materiality of those representations and omissions also establishes causation between Defendant's conduct and the injuries sustained by Plaintiff and the Putative Class.

57.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the other Putative Class members.

58.     In making the false, misleading, and deceptive representations and omissions, Defendant knew and intended that consumers would pay a premium for "Naturally Soothing" labeled products over comparable products that are not labeled "Naturally Soothing" furthering Defendant's private interest of increasing sales for its Products and decreasing the sales of products that are truthfully offered as "Naturally Soothing" by Defendant's competitors, or those that do not claim to be "Naturally Soothing."

59.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the other Putative Class members in that they:

    a.   paid a sum of money for Products that were not as represented;

    b.   paid a premium price for Products that were not as represented;

    c.   were deprived the benefit of the bargain because the Products they purchased were different than what Defendant warranted;

    d.   were deprived the benefit of the bargain because the Products they purchased had less value than what was represented by Defendant;

e.  did not receive Products that measured up to their expectations as created by Defendant;

f.  ingested a substance that was other than what was represented by Defendant;

g.  ingested a substance that Plaintiff and the other members of the Putative Class did not expect or consent to;

h.  ingested a product that was artificial, synthetic, genetically modified, or otherwise unnatural;

i.  ingested a substance that was of a lower quality than what Defendant promised;

j.  were denied the benefit of knowing what they ingested;

k.  were denied the benefit of truthful food labels;

l.  were forced unwittingly to support an industry that contributes to environmental, ecological, and/or health damage;

m.  were denied the benefit of supporting an industry that sells natural foods and contributes to environmental sustainability; and

n.  were denied the benefit of the beneficial properties of the natural foods promised.

60.    Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the other Putative Class members would not have been economically injured because Plaintiff and the other Putative Class members would not have purchased the Products or would have paid less for the Products.

61.    Plaintiff and the other Putative Class members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions. Plaintiff and the other

Putative Class members purchased, purchased more of, or paid more for, the Products than they would have done, had they known the truth about the Products' unnaturalness.

62.    Accordingly, Plaintiff and the other Putative Class members have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

### D.    Plaintiff's Purchase and Reliance on the "Naturally Soothing" Statement

63.    Plaintiff purchased Ricola during the Class Period and prior to the commencement of this action. Plaintiff relied upon the statement that the Products were "Naturally Soothing" in deciding to purchase the Products. Had Plaintiff known at the time that the Products were not, in fact, "Naturally Soothing," but, instead, contained unnatural, synthetic, artificial, and/or genetically modified ingredients, Plaintiff would not have purchased the Products or would have paid less for the Products. However, if Defendant's misleading conduct were remedied, i.e., if the Products were altered to conform to the representations on the labels, Plaintiff would purchase the Products again.

64.    The Products purchased by Plaintiff claimed to be "Naturally Soothing" on the front packaging, which Plaintiff perceived, read, and relied on in making Plaintiff's decision to purchase the Products. Plaintiff interpreted the "Naturally Soothing" claim to mean that the Products did not contain any unnatural, synthetic, artificial, and/or genetically modified ingredients.

65.    Subsequent to purchasing the Products, Plaintiff discovered that they contained unnatural, synthetic, artificial, and/or genetically modified ingredients.

66.    Plaintiff and members of the Putative Class would not have purchased or would have paid less for the Products had they known that they were not "Naturally Soothing" and contained unnatural, synthetic, artificial, and/or genetically modified ingredients.

67.     Defendant's "Naturally Soothing" statement related to the Products is material to a consumer's purchase decision because reasonable consumers, such as Plaintiff and members of the Putative Class, care whether products contain unnatural, synthetic, artificial, and/or genetically modified ingredients, and thus attach importance to an "Naturally Soothing" claim when making a purchasing decision.

68.     Plaintiff and the Putative Class, all reasonable consumers, do not expect Products that claim to be "Naturally Soothing" to contain highly processed, unnatural, synthetic, artificial, and/or genetically modified ingredients.

69.     Plaintiff would not have purchased the Products if Plaintiff had known the "Naturally Soothing" claim was false. Plaintiff would purchase the Products again if they were not misbranded. However, if Plaintiff and the Putative Class purchase the Products again in their presently labeled condition, they will reencounter and repurchase Products that are not what they are represented to be. Thus, Defendant's deceptive and unfair conduct has deterred Plaintiff from purchasing the mislabeled Products.

70.     Plaintiff and the Putative Class have suffered and will continue to suffer irreparable harm if Defendant continues to engage in such deceptive, unfair, and unreasonable practices.

### E.     Plaintiff Has Suffered Economic Damages

71.     As a result of purchasing the Products that claim to be "Naturally Soothing," but contain unnatural, synthetic, artificial, and/or genetically modified ingredients, Plaintiff and members of the Putative Class have suffered economic damages.

72.     Defendant's "Naturally Soothing" advertising for the Products was and is false, misleading, and/or likely to deceive reasonable consumers. Therefore, the Products are valueless,

worth less than what Plaintiff and members of the Putative Class paid for them, and/or are not what Plaintiff and members of the Putative Class reasonably intended to receive.

73.     Because the Products are unlawfully misbranded, and there is no market value for an unlawful product, Plaintiff and the Putative Class seek damages equal to the aggregate purchase price paid for the Products during the Class Period and injunctive relief described below.

74.     Moreover, and in the alternative, Plaintiff and members of the Putative Class paid a price premium for the so called "Naturally Soothing" Products, over other similar products that do not claim to be "Naturally Soothing." As a result, Plaintiff and the Putative Class are entitled to damages in the amount of the difference between the premium purchase price charged for the Products and the true market value of the Products without the false "Naturally Soothing" representations. Plaintiff and the Putative Class are also entitled to statutory damages.

75.     Plaintiff and the Putative Class face a real and immediate threat of future harm in the form of deceptively labeled, packaged, and marketed Products sold at inflated prices based upon the deception that the Products are "Naturally Soothing," when they are not. Absent an injunctive order, Plaintiff and the Putative Class cannot rely on Defendant's Products to be truthful and non-misleading, and the Products will continue to be sold at an artificially inflated price beyond its true market value.

76.     Defendant's on-going wrongful conduct and practices, if not enjoined, will subject Plaintiff, the Putative Class, and other members of the public to substantial continuing harm and will cause irreparable injury to the public. Absent the injunctive power of this Court, Defendant will be permitted to continue to deceive and mislead members of the Putative Class and consuming public at large.

## CLASS ACTION ALLEGATIONS

77.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

78.     Pursuant to *Federal Rule of Civil Procedure* 23, Plaintiff brings this class action and seeks certification of the claims and certain issues in this action on behalf of a Putative Class defined as a Statewide Class and additionally and/or alternatively, a Nationwide Class as follows:

      a.     **Nationwide Class**. Plaintiff brings this action on behalf of Plaintiff and on behalf of a nationwide class, as follows:

         i.     **Nationwide Class**.

           1.     Pursuant to Rule 23(a) and (b)(2), all United States residents who purchased the Products, for personal use and not resale, during the four-year period preceding the date of the filing of this Complaint, through and to the date Notice is provided to the Class;

           2.     Pursuant to Rule 23(a) and (b)(3) all United States residents who purchased the Products, for personal use and not resale, during the four-year period preceding the date of the filing of this Complaint, through and to the date Notice is provided to the Class.

        ii.     **Statewide Class**. Plaintiff brings this action on behalf of Plaintiff and on behalf of a statewide class, as follows:

           1.     **New York Class**.

             a. Pursuant to Rule 23(a) and (b)(2), all New York residents who purchased the Products, for personal use and not resale, during the

four-year period preceding the date of the filing of this Complaint, through and to the date Notice is provided to the Class;

b. Pursuant to Rule 23(a) and (b)(3), all New York residents who purchased the Products, for personal use and not resale, during the four-year period preceding the date of the filing of this Complaint, through and to the date Notice is provided to the Class.

79.     Plaintiff respectfully reserves the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified, including a reservation of the right to seek to certify subclasses, if discovery reveals that modifying the class definitions and/or seeking additional subclasses would be appropriate, including subclasses by state and/or purchase location.

80.     Excluded from the Putative Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Putative Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

81.     Defendant's representations, practices, and/or omissions were applied uniformly to all members of the Putative Class, including any subclass, so that the questions of law and fact are common to all members of the Putative Class and any subclass.

82.     All members of the Putative Class and any subclass were and are similarly affected by the deceptive advertising for the Products, and the relief sought herein is for the benefit of Plaintiff and members of the Putative Class and any subclass.

**Numerosity—Federal Rule of Civil Procedure 23(a)(1)**

83.     Based on the annual sales of the Products and the popularity of the Products, it is readily apparent that the number of consumers in both the Putative Class and any subclass are so large as to make joinder impractical, if not impossible. Members of the Putative Class and any subclass may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

**Commonality and Predominance—Federal Rules of Civil Procedure 23(a)(2) and (b)(3)**

84.     Questions of law and fact common to the Putative Class and any subclass exist that predominate over questions affecting only individual members, including:

a.     Whether Defendant's business practices and representations related to the marketing, labeling, and sales of the Products were unfair, deceptive, fraudulent, and/or unlawful in any respect, thereby violating New York Deceptive Trade Practices Law, NY Gen. Bus. § 349(a);

b.     Whether Defendant violated New York Deceptive Trade Practices Law, NY Gen. Bus. §§ 350 *et seq.*, with its practices and representations related to the marketing, labeling, and sales of the Products;

c.     Whether knowledge of the fact that the Products are not "Naturally Soothing" is material to a reasonable consumer;

d.     Whether the claim that the Products are "Naturally Soothing" is misleading to a reasonable consumer;

e.     Whether a reasonable consumer is likely to be deceived by claims that the Products are "Naturally Soothing," despite the fact that the Products' are unnatural, artificial, synthetic, and/or genetically modified; and

f.      Whether Defendant's conduct as set forth above injured consumers, and if so, the extent of the injury.

**Typicality—Federal Rule of Civil Procedure 23(a)(3)**

85.    The claims asserted by Plaintiff in this action are typical of the claims of the members of the Putative Class and any subclass, as the claims arise from the same course of conduct by Defendant, and the relief sought within the Putative Class and any subclass is common to the members of each. Further, there are no defenses available to Defendant that are unique to Plaintiff.

**Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4):**

86.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Putative Class and any subclass.

87.    Plaintiff has retained counsel competent and experienced in both consumer protection and class action litigation. The Putative Class's and any subclass's interests will be fairly and adequately protected by Plaintiff's counsel. Undersigned counsel has represented consumers in a wide variety of actions where they have sought to protect consumers from fraudulent and deceptive practices.

**Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2)**

88.    Certification also is appropriate because Defendant acted, or refused to act, on grounds generally applicable to both the Putative Class and any subclass, thereby making appropriate the final injunctive relief and declaratory relief sought on behalf of the Putative Class and any subclass as respective wholes. Further, given the large number of consumers of the Products, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

**Superiority—Federal Rule of Civil Procedure 23(b)(3)**

89.    A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that individual actions would engender.

90.    The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of this class action. Absent a class action, it would be highly unlikely that the representative Plaintiff or any other members of the Putative Class or any subclass would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery.

91.    Certification of this class action is appropriate under *Federal Rule of Civil Procedure* Rule 23, because the questions of law or fact common to the respective members of the Putative Class and any subclass predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for a fair and efficient decree of the claims.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Violation of the New York General Business Law § 349**
**(Unlawful Deceptive Acts and Practices)**
**(On Behalf of Plaintiff and the New York Class and/or the Nationwide Class)**

92.     Plaintiff re-alleges and incorporates the paragraphs prior to the causes of action of this Class Action Complaint as if set forth herein.

93.     Plaintiff and the members of the Putative Class are consumers who purchased the Products produced by Defendant. Plaintiff brings this action pursuant to New York General Business Law § 349 ("GBL § 349").

94.     GBL § 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]."

95.     Defendant engaged in false and misleading marketing concerning the qualities and ingredients of its Products by labeling the Products as "Naturally Soothing" when they are not because they contain unnatural, synthetic, artificial, and/or genetically modified ingredients.

96.     As fully alleged above, by advertising, marketing, distribution, and/or selling the Products as "Naturally Soothing" to Plaintiff and other members of the Putative Class, Defendant engaged in and continues to engage in deceptive acts and practices.

97.     Plaintiff and the other members of the Putative Class further seek to enjoin such unlawful deceptive acts and practices as described above. Each of the Putative Class members will be irreparably harmed unless the unlawful actions of the Defendant are enjoined in that Defendant will continue to falsely and misleadingly advertise the Products as "Naturally Soothing" when they are not. Towards that end, Plaintiff and the Putative Class request an order granting them injunctive relief as follows: order disclosures and/or disclaimers on the labeling or

advertising of the Defendant's Products and/or remove the unnatural, synthetic, artificial, and/or genetically modified ingredients.

98.    Absent injunctive relief, Defendant will continue to manufacture and sell its Products as "Naturally Soothing" to the detriment of consumers.

99.    In this regard, Defendant has violated, and continues to violate GBL § 349, which makes deceptive acts and practices unlawful.

100.    As a direct and proximate result of Defendant's violation of GBL § 349 as described above, Plaintiff and the other members of the Putative Class have suffered damages in an amount to be determined at trial.

101.    Therefore, Plaintiff prays for relief as set forth below.

## SECOND CAUSE OF ACTION

**Violation of the New York General Business Law § 350**
**(False Advertising)**
**(On Behalf of Plaintiff and the New York Class and/or the Nationwide Class)**

102.    Plaintiff re-alleges and incorporates the paragraphs prior to the causes of action of this Class Action Complaint as if set forth herein.

103.    Plaintiff and the members of the Putative Class are consumers who purchased the Products produced by Defendant. Plaintiff brings this action pursuant to New York General Business Law § 350 ("GBL § 350").

104.    GBL § 350 makes "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service" in New York unlawful. GBL § 350 defines "false advertising" in relevant part, as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

105.    Defendant engaged in false and misleading advertising and marketing concerning

the qualities and ingredients of its Products by advertising the Products as "Naturally Soothing" when they are not because they contain unnatural, synthetic, artificial, and/or genetically modified ingredients.

106.    As fully alleged above, by advertising the Products as "Naturally Soothing" when they are not, Defendant engaged in and continues to engage in false advertising.

107.    Plaintiff and the other members of the Putative Class further seek to enjoin such unlawful acts and practices as described above. Each of the Putative Class members will be irreparably harmed unless the unlawful actions of the Defendant are enjoined in that Defendant will continue to falsely and misleadingly advertise the Products as "Naturally Soothing" when they are not. Therefore, Plaintiff and the Putative Class request an order granting them injunctive relief as follows: order disclosures and/or disclaimers on the labeling or advertising of the Defendant's Products and/or remove the unnatural, synthetic, artificial, and/or genetically modified ingredients.

108.    Absent injunctive relief, Defendant will continue to advertise the Products as a "Naturally Soothing"  food product to the detriment of consumers.

109.    In this regard, Defendant has violated, and continues to violate GBL § 350, which makes false advertising unlawful.

110.    As a direct and proximate result of Defendant's violation of GBL § 350 as described above, Plaintiff and the other members of the Putative Class have suffered damages in an amount to be determined at trial.

111.    Therefore, Plaintiff prays for relief as set forth below.

## **THIRD CAUSE OF ACTION**

**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class)**

112.     Plaintiff re-alleges and incorporates the paragraphs prior to the causes of action of this Class Action Complaint as if set forth herein.

113.     As a result of Defendant's deceptive, fraudulent, and misleading labeling, advertising, marketing, and sales of the Products, Defendant was enriched, at the expense of Plaintiff and the other Putative Class members through the payment of the purchase price for Defendant's Products.

114.     Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiff and the other Putative Class members in light of the fact that the Products purchased by Plaintiff and the other Putative Class members were not what Defendant purported them to be. Thus, it would be unjust or inequitable for Defendant to retain the benefit without restitution to Plaintiff and the other Putative Class members for the monies paid to Defendant for such Products.

115.     Therefore, Plaintiff prays for relief as set forth below.

## FOURTH CAUSE OF ACTION

### Negligent Misrepresentation
### (On Behalf of Plaintiff and the Nationwide Class)

116.    Plaintiff re-alleges and incorporates the paragraphs prior to the causes of action of this Class Action Complaint as if set forth herein.

117.    Defendant has negligently represented a material fact to the public, including Plaintiff and the Putative Class, that the Products are "Naturally Soothing," when they are not natural because they contain unnatural, synthetic, artificial, and/or genetically modified ingredients.

118.    Defendant knew or should have known that these representations and/or omissions would materially affect Plaintiff's and the Putative Class's decisions to purchase the Products.

119.    Plaintiff and other reasonable consumers, including the Putative Class, reasonably relied on Defendant's representations set forth herein, and, in reliance thereon, purchased the Products.

120.    The reliance by Plaintiff and the Putative Class was reasonable and justified in that Defendant appeared to be, and represented itself to be, a reputable business, and it distributed the Products through reputable companies.

121.    Plaintiff and the Putative Class would not have been willing to pay, or would have paid less, for Defendant's Products if they knew that the Products were deceptively marketed as "Naturally Soothing," when they are not natural because they contain unnatural, synthetic, artificial, and/or genetically modified ingredients.

122.    As a direct and proximate result of these misrepresentations, Plaintiff and

members of the Putative Class were induced to purchase and consume Defendant's Products, and have suffered damages to be determined at trial in that, among other things, they have been deprived of the benefit of the bargain in that they bought Products that were not what they were represented to be, and they have spent money on Products that had less value than was reflected in the premium purchase price they paid for the Products.

123.    Accordingly, Plaintiff and the Putative Class are entitled to monetary and compensatory damages, injunctive relief, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, pre- and post-judgment interest, and attorneys' fees and costs, and such further relief as this Court deems just and proper.

124.    Therefore, Plaintiff prays for relief as set forth below.

## PRAYER FOR RELIEF

THEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendant as follows:

A.      For an Order certifying the Class under Rule 23, naming Plaintiff as the Class representative and designating Plaintiff's counsel as counsel for the Putative Class;

B.      For an Order declaring that Defendant has committed the violations alleged herein;

C.      For declaratory and injunctive relief pursuant to, without limitation, section 349 of the New York General Business Law;

D.      For declaratory and injunctive relief pursuant to, without limitation, section 350 of the New York General Business Law;

E.      For an Order providing restitution, disgorgement, and all other forms of equitable monetary relief to Plaintiff and the other Putative Class members;

F.      For an Order awarding damages, including but not limited to statutory damages under GBL sections 349 and 350, in amounts to be determined by the Court and/or jury;

G.      For an Order awarding pre- and post-judgment interest on all amounts awarded;

H.      For an Order awarding Plaintiff and the other Putative Class members their reasonable attorneys' fees and expenses and costs of suit; and

I.      For such further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff respectfully demands a trial by jury on all issues so triable.

Dated: February 1, 2019                    Respectfully Submitted,

*/s/ Michael R. Reese*
Michael R. Reese
George V. Grande
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone:    (212) 643-0500
Facsimile:    (212) 253-4272
Email:        *mreese@reesellp.com*
              *ggranade@reesellp.com*


**THE SULTZER LAW GROUP P.C.**
Jason P. Sultzer, Esq.
85 Civic Center Plaza, Suite 104
Poughkeepsie, NY 12601
Telephone: (845) 483-7100
Facsimile: (888) 749-7747
Email: *sultzerj@thesultzerlawgroup.com*

**EGGNATZ PASCUCCI, P.A.**
Joshua H. Eggnatz
5400 S. University Drive, Suite 417
Davie, Florida 33328
Telephone: (954) 889-3359
Email: jeggnatz@justiceearned.com


*Counsel for Plaintiff and the Putative Class*

# **EXHIBIT A**

**Contested Ricola "Naturally Soothing" Products (listed in alphabetical order):**

a. Cherry Honey



b. Green Tea with Echinacea – Sugar Free



c.   Honey Lemon with Echinacea



d.   Lemon Mint



e.   Lemon Mint – Sugar Free



f.   Mixed Berry with Vitamin C



g.  Original Swiss Herb – Sugar Free



h.  Swiss Cherry – Sugar Free

